The State ex rel. Crain v. Hamilton.

THE STATE OF MISSOURI *ex rel.* JOHN CRAIN, Appellant, v. ISAAC HAMILTON *et al.*, Respondents.

Kansas City Court of Appeals, November 10, 1890.

1. **Public Schools:** FAILURE OF DIRECTORS TO MAKE RULES AND REGULATIONS. Because the board of school directors fail to make needful rules and regulations for the organization, grading and government of the schools in their district, a pupil may not with impunity transgress the unwritten, but well-defined, rules of conduct prescribed by a common sense of decency and propriety. When the board deem it unnecessary or neglect it, the teacher is left to adopt such reasonable rules as he may deem fit and proper.

2. ———— : ———— : EXPULSION OF PUPIL. The power of expulsion given the directors by the statute is not limited to cases of infraction of such rules as they may have theretofore promulgated, but extends to cases where they have become satisfied that the interests of the school require such expulsion.

3. ———— : ———— : DUE EXAMINATION. " Due examination, " used in the statute, does not require a formal trial with written charges preferred, notice to appear, having witnesses, etc., but a due and proper, though informal, examination ; and, if in the directors' judgment the pupil's conduct is detrimental to the interests of the school, then the power of expulsion is conferred.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Jas. C. McGinnis,* for appellant.

(1) The directors expelled the pupil without " due examination." Appellant has the right to send his son

to the school of which respondents are directors. Const.
Mo. sec. 1, art. 11 ; *King v. School Board*, 71 Mo. 628 ;
*Chase v. Stephenson*, 71 Ill. 383 ; *Roe v. Deming*, 21
Ohio St. 666 ; *Rulison v. Post*, 79 Ill. 567. And he
cannot be deprived of this right except " by due process
of law." Const. U. S., sec. 1, art. 14. " Due examina-
tion " must be made into the matters charged against
the pupil, before he can be deprived of his freedom of
the school. R. S. 1879, secs. 7045, 7072, see title "Exam-
ination." Bouvier's Law Dictionary [ 15 Ed. ] pp. 471,
617, title "Due Process of Law" ( 2 ) . The finding was
against the law because the evidence shows there were
no " needful " rules established by either the board or
teacher, the violation of which would justify expulsion.
The directors had made no rules, and the teacher could
have done so. *Deskins v. Gose*, 85 Mo. 485. But, to give
his rules force and validity, it was necessary that a
copy of them should have been filed with the clerk of
the school district for the information of all concerned,
as the statutes require shall be done. R. S. 1879, sec.
7045 ; *State ex rel. v. Board*, 63 Wis. 234 ; *Dritt v. Snod-
grass*, 66 Mo. 286 ; *Murphy v. Board*, 30 Iowa, 429. ( 3 )
The rules must be needful and reasonable. And reason-
able rules must be enforced in a reasonable manner.
*Fertich v. Nuchener*, 111 Ind. 472. And the court will
be the judge of the reasonableness of the rule, and of its
enforcement. *Fertich v. Nuchener*, *supra; Van Vactor
v. State*, 113 Ind. 276. ( 4 ) Rules are unreasonable
when they relate to subjects outside of the successful
operation of the school. *Henry v. School Board*, 71 Mo.
628. The directors have no power to discharge a teacher,
much less a pupil, for swearing. *Arnold v. School Dist.*,
78 Mo. 226.

*Scott & Cooney*, for respondents.

( 1 ) " Due process of law," as used in the consti-
tution of the United States, if it can have any application

to the case at bar, can mean no more than that the proceedings shall be in accordance with the laws and statutes of the state in such cases made and provided. "Due process of law" is not necessarily judicial process. *Davidson v. Board of Executors*, 96 U. S. 97–108; *McMillen v. Anderson*, 95 U. S. 37–42; *Murry v. Hoboken County*, 18 How. 272. (2) "Examination" is defined in Webster's dictionary to mean, "the act of examining, or state of being examined, a careful search, investigation or inquiry." And "due examination," as used in the Revised Statutes of Missouri, 1879, section 7045, means a proper investigation or inquiry. The word "examination" is not used in the statute in a technical sense, and in the nature of things, and the object of the statute, cannot have any of the meanings given to it in Bouvier's Law Dictionary. The evidence shows that the board of directors made due examination of the charges made against Ben, and the school record shows that Ben was expelled from school by the board of directors, and that the directors were all present. (3) The board of directors had failed to make any rules and regulations for the government of the school, and the teacher had the right to adopt reasonable rules to promote good order and discipline in the school. *Deskins v. Gose*, 85 Mo. 487. This the teacher did, and promulgated his rules to the school. There is no law requiring the teacher's rules to be written and filed with the clerk of the school district; in fact there is no provision in the statute by which the teacher's rules could be filed with the clerk of the school district. 2 R. S. 1879, sec. 7045; *Deskins v. Gose, supra.* (4) But the board of directors had the power to expel a pupil independent of any rules. R. S. 1879, sec. 7045. "They shall also have the power to suspend or expel a pupil." What for? Not necessarily for a violation of the rules of the school. But "whenever, upon due examination, they become satisfied that the interests of

the school demand such expulsion.'' The great major-
ity of district schools in the state are conducted without
any written or formally adopted rules. *Deskins v.
Gose*, 85 Mo. 485. The directors had the power to expel
if they honestly judged the pupil guilty of such con-
duct as would injuriously affect the discipline and
management of the school. And the directors are the
sole judges of this matter. *Dritt v. Snodgrass*, 66 Mo.
294; R. S. 1879, sec. 7045. ( 5 ) Profanity is more
reprehensible in a teacher than in a pupil, but the law
gives authority only to the county commissioner to
correct profanity in a teacher, and the reference, made
by appellant to the 78 Mo. 226, is not in point, and
furnishes him no argument to sustain the right of a
pupil to be profane in school. The directors made such
'' due examination '' as is required by the statute. If
the directors acted honestly, and the subject-matter of
their action was within their jurisdiction, no court will
interfere with them, even though they were mistaken
in judgment. *King v. School Board*, 71 Mo. 628.

GILL, J.—This is a *mandamus* proceeding brought
by relator Crain against defendants Hamilton, Clark and
Hudson, directors of a school district in Saline county,
seeking to compel said directors to restore Benjamin
Crain, plaintiff's minor son, as a pupil in said school,
from which the said Benjamin had been, it is alleged,
illegally and wrongfully expelled by said defendants.
An alternative writ of *mandamus* having been issued,
defendants made return stating that they had full war-
rant and authority in law to expel plaintiff's boy from
said school, and that in December, 1888, they made an
order expelling him therefrom ; that they so expelled
said boy upon due examination into his conduct as a
pupil of said school, and after becoming fully satisfied
that the interest of said school demanded his expulsion ;
that, while attending said school, he would, during

school hours, against the rules of the teacher, and without his permission, go out of the schoolroom. He was in the habit of carrying to school a weapon commonly called "brass knuckles." While in school he would lie down on his seat and pretend he was asleep. He neglected to study; he annoyed and confused both pupils and teacher by frequently talking aloud. At recess when the teacher would request the pupils to keep quiet and make no disturbance in the house, he would halloo and yell and strive to ridicule the request of the teacher and set his authority at defiance. When during school hours the teacher requested the school to be quiet, and all the other pupils would become quiet, he would spit and hawk and scrape his feet over the floor for the purpose of setting the teacher and his authority at defiance. He would mimic the teacher, and assume grotesque attitudes for the purpose of creating disturbance among the other pupils, and detract them from their studies. On the play ground he indulged in the vile habit of swearing, and getting up fights between the smaller boys,—all of which conduct on the part of said boy was against the rules and authority of said teacher, and for which he was reprimanded without effect, and which tended to disorganize said school and weaken the authority of said teacher over said pupils. The respondents further stated that said boy while attending said school was in the habit of smoking and chewing tobacco. He smoked around and about the schoolhouse during intermission of the school, and chewed tobacco in the schoolhouse during school hours. He would, while chewing tobacco in the school, spit tobacco juice all over the floor, on the walls, on the windows, squirt it from his mouth on the stove, on the coal-scuttle, on the poker. This smoking, chewing and spitting of tobacco juice, said boy continued all the time he was in attendance on said school, although often remonstrated with by the teacher, and was, by said teacher, frequently requested to stop chewing and

The State ex rel. Crain v. Hamilton.

spitting. That he paid no attention to said teacher's request, but insisted he had the right to use tobacco, and that in its use, both in and out of school, he had the consent and encouragement of his father. That said boy gave tobacco to other pupils and adduced them to chew ; and one evening while going home from school he smoked a pipe, puffing the smoke into the faces of other pupils, and, although reprimanded by the teacher, who happened to be present, he persisted in his course and that on that occasion he was grossly rude, defiant and insolent to the teacher. That subsequently at school said teacher told said boy that his conduct on the road on said evening was such that he would have to be whipped or expelled, to both of which said boy refused to submit, and refused to leave school or be whipped. That the teacher reported said case to respondents, who examined into the matter, and becoming satisfied that said facts were substantially true, and that it was for the best interest of the school that said boy be expelled, they informed appellant and said boy that he would have to submit to whipping or expulsion, to neither of which did they consent, and afterwards they expelled him. Plaintiff by proper pleading denied the facts thus charged in the return. On a hearing in the circuit court, the finding and judgment were entered for defendants, and plaintiff has appealed to this court. The point seemingly relied upon by appellant's counsel, as stated in the brief, is that the directors expelled the pupil without sufficient cause, and without "due examination."

First now as to the matter of "*due examination*" into the boy's conduct. Higginbottom was the teacher. The school had begun in the fall of 1888, with this seventeen-year-old boy, Benjamin Crain, as one of the pupils. It seems that for weeks prior to his expulsion this pupil had, in the estimation of his tutor, been repeatedly guilty of violations of that order and decorum necessary for the successful conduct of a school.

This culminated in an altercation between pupil and teacher on the last Friday in November, while on the road after school hours, as set out in the foregoing return. Complaint was made to the directors, who met at the schoolhouse the following Monday (December 3) and, in an informal way, inquired into the conduct of young Crain. The directors seemed to have talked with the teacher, with the boy and his father, as well as with other students; and after the expiration of eight days therefrom finally made an order expelling the boy, Benjamin Crain. It is claimed that at this time there were no rules prescribed by the directors governing the school, and, therefore, none violated so. as to authorize defendants to expel the boy. It is urged, too, that, before expulsion, written charges should have been preferred, and a formal hearing had after notice to the pupil or his father, or both. That section of the school law relied upon in support of this contention reads thus: "The board shall have the power to make all needful rules and regulations for the organization, grading and government of the schools in their district; said rules to take effect when a copy of the same, duly signed by a majority of the board, is deposited with the district clerk, whose duty it shall be to transmit forthwith a copy of the same to the teachers employed in the schools; said rules may be amended or repealed in like manner. They shall also have the power to suspend or expel a pupil whenever, upon due examination, they become satisfied that the interests of the school demand such expulsion. R. S. 1879, sec. 7045." Now the facts here are, that up to the time that young Crain was expelled the board of directors had not made or promulgated any rules for the government of this school. But, for that failure, will it be said that the pupil may with impunity transgress those unwritten, but well-defined, rules of conduct prescribed by a common sense of decency and propriety? Surely not. It

The State ex rel. Crain v. Hamilton.

was not the province of this statute to furnish a complete code of rules for the management of the public schools. The board of directors is thereby *empowered* to make rules. But should they deem it unnecessary, or neglect the exercise of such power, the teacher is left to adopt such reasonable rules as he may deem fit and proper. *Deskins v. Gose*, 85 Mo. 485.

"They shall also have the power to suspend or expel a pupil whenever, upon due examination, they become satisfied that the interests of the school demand such expulsion." Quoted from section 7045, *supra*. The power of expulsion here given the directors is not limited to cases of infraction of such rules as they (the directors) may have theretofore promulgated, but extends to cases *where they become satisfied that the interests of the school require such expulsion*. It matters not whether rules have been announced by either directors or teachers. If the conduct of the pupil is such as reasonably to satisfy such school officers that the presence of that pupil is detrimental to the interests of the school, then the power of expulsion is conferred. This power, as a matter of course, must not be exercised in an arbitrary, unreasonable or oppressive manner, or on some frivolous pretext. If so then the outraged pupil could well seek redress from the courts.

By the words, "*upon due examination*," we do not understand the statute, before quoted, to require a formal trial of the objectionable pupil—that written charges should be preferred, with a notice to appear, hearing of witnesses, etc. From the necessity of the case such examinations must be wholly informal. Directors of school districts must frequently come from the plain and unlearned farmers and citizens of the country, unused to matters of judicial inquiry. They are advised by this statute to investigate the conduct of the pupil—to give a due and proper examination—and

if in their judgment such pupil is unfit they are authorized to expel.   These defendants, it seems, did make due examination.   There is nothing appearing in this record to justify, in the slightest degree, a charge of haste,   partiality   or   prejudice.   They   met   first   on December 3, and then talked the matter over with the plaintiff and son—heard the teacher's complaints as to the boy's conduct generally—and particularly as to what occurred the Friday preceding; gathered information from other pupils; postponed action for several days and finally, on December 11, made an order expelling plaintiff's son, as set out in the order, because of insubordination, and because for the best interests of the school his expulsion was demanded.   We have read with care the entire testimony,   and while refraining from any specific comments must say that ample reasons there appear for the action of the defendants in expelling plaintiff's son.   We discover no reason for disturbing the judgment of the circuit court, and the same is, therefore, affirmed.   All concur.